May it please the Court, I'm Karen Landau and I represent Irene Pemkova. This case, in this case, the defendant timely requested leave to represent herself and was required to proceed to trial the same day. And that deprived her of her right to represent, you know, an effective right to represent herself, and the district court abused its discretion in denying a continuance. How many years had she had continuances? Over what period? I would say there was, it was probably, it's an 08 indictment, so, and this was Seven years. Seven years is my calculation. Yes, but I think, Your Honor, I'd like to point out a couple things about that time. So, first of all, for most of the time, that, it was not, all the continuances were not at her behest. There were other defendants, she was joined with other defendants. And there was a period of time where she apparently suffered a severe car accident and she was injured, and so there was a continuance for that. The last continuances, and I think the ones that the Court should focus on, one was necessitated by the fact that her then attorney, not the attorney, her name was Diane Bass, declared a doubt as to her competence. And there were several, and that, of course, then she was, you know, she underwent an examination, there was a hearing, and she was found to be competent. But that time, that obviously necessitated some delay. Then a new attorney was appointed for her, and Mr. Stewart represented her from, I believe, around April or May, I think April of 2014. Wasn't, just to get down to the nub of this, wasn't her biggest problem getting the so-called expert witnesses to actually show up and testify at trial? That was the issue. And a lot of things happened over time. And, you know, so I think it's important to focus on a couple of things. The judge initially denied the continuance and criticized her for not having the witnesses there when she was supposed to go to trial. But at that time, she was represented. And, you know, her attorney and she differed on strategy, and counsel's strategy may well have been better. But, you know, when you're represented, it's not realistic for the court to say, you have to go against your attorney and get these witnesses here. That is simply not a realistic tact. Ms. Lindo, good morning. Good morning. Let me ask you a question. Did your client ever tell the district court there is a date certain when at least one of these witnesses would show up? She didn't say a day certain, but she said she could get them there by September or the following January. And I think the problem is that the court kind of set a moving target because the court first said, well, they have to be here June 9th or they're not going to testify. And then they have to be here June 23rd.  And if these people were, you know, experts and they were, you know, legitimately going to come, I don't think it's unrealistic to say, okay, look, they need three months notice. I mean, it's not uncommon for any. Well, I think that's kind of the underlying this. Were they ever legitimately going to come or was this kind of a pie-in-the-sky proposition? And so the question is, did she present anything to the court to give the court any comfort that actually these were real witnesses that had agreed to come once they had an appropriate time to come? Right. And I think that's where you get into the difficulty of the pro se who is a little, shall we say, unusual. I think that there was some evidence. There were phone calls that occurred during trial. There apparently was an email that she showed to Judge Carter. You know, beyond that, no. I mean, look, it's not an ideal record. It's not as though, you know, we had to. It looked to me, now you tell me if I'm wrong, it looked to me that the judge took the extraordinary step of actually calling the witnesses. Is that right? He called some of them, yes. Okay. And now one of those people said, Your Honor, I can commit to this date. Well, there was one actually that some said it wasn't that they could commit to the date. You know, like I believe he spoke to, and I can't remember off the top of my head if it was Hunter or I think it was, it may have been Hunter, and the judge is like, Well, can you be here by June 23rd? And he's like, No, that's impossible. And then the judge kept toying with the idea of possibly calling the jury back or continuing it. You know, this is Judge Carter. It seems to me he was extremely lenient with your client, given how he runs his general caseload. Well, in one way he was lenient, and in the other he wasn't. And he made a lot of statements that were conflicting. For example, he wasn't lenient in the sense that he said, You're going to trial today. You know, you're not getting any extension of time at all. And in Farias, you know, the court had said, That's really not acceptable. Once somebody makes a timely motion to represent themselves, it's not enough to make them go to trial. You can't make them go to trial the very next day. And so when we start out with that mistake, and then, yes, I think he did, and he was obviously somewhat uncomfortable with his decision because he commented on it multiple times. I think he went back, and he tried to be lenient, but once you have that, I mean, realistically, once you have a pro se, and she's going to trial the next day, and she hasn't, and, again, I don't think it's realistic or reasonable to expect a pro se to have witnesses there when she was represented by counsel at some point. If they could have committed, say, to a date certain in September, he likely would have granted that continuance. I don't know if he would have or not. He was concerned about losing standby counsel. He asked if the government to stipulate to a mistrial, which they declined. I mean, that's, you know, I can't really blame the government. But, you know, I guess I think that the proper avenue would have been to give her an extension to say, look, you know, we're going to go to trial in October or whenever we're setting a date, and you have the witnesses here or they're not testifying. All right, so if that had happened, if she had gotten a continuance, what would these witnesses actually have testified to? You know, that I can't tell you. I mean, from what she said, they would have testified that there were these high-yield investment programs in Europe. With no risk? Apparently, yes. That was her position all along. Well, I mean, do you think it was really plausible that she could get a witness who would testify that you would have a high-yield investment with absolutely no risk and a complete 100% guarantee? Maybe the witness wouldn't have testified precisely to that, but they might have testified that there were high-yield and that they might have provided testimony that was because there was other, you know. And that's a theory of her case, though? That was the theory of her case, but she kind of backed off that during the trial. That was where she disagreed with the prior two counsel, right? Right, you're right. That's true. That's true. I don't know what the witnesses would have testified to other than that was her position. How was she harmed by not having those witnesses? Well, she was left by herself, you know, to testify by herself. And her testimony was, to put it charitably, rather confusing. And, you know, any witness that will corroborate your testimony is probably better than none. So, in other words, when she had the misfortune to meet up with the undercover officers, she basically told them that there was this 500 to 1,000% profit investment. It wasn't quite that high, but it was about 300% a year. It was high. That was profit on $1 million or $10 million. So are you suggesting somehow she would get some witness would come in and say, yes, these are the typical kind of investments that are out there in Europe? I mean, she testified to what she told them. So the prejudice part here is also a problem in terms of what would it have mattered. I recognize that, Your Honor. But I think what we're looking at is somebody who, yeah, I recognize that. Ultimately, what you have, though, is a pro se who had to go to trial in one day. Right. And that's a real problem. And even if you take away the witnesses, I still think, and the judge made all these statements about her own preparation, but it's impossible, it's difficult to imagine that she couldn't have been better prepared, that she couldn't have had, you know, that the time wouldn't have benefited her. And I understand. And, you know, interestingly enough, and I'll just, I'm running out of time, so I'm just going to add this, you know, the judge kind of went back and forth, and at one point he said, I don't believe the witnesses exist. And then he said, I think you're acting in good faith. And, you know, so there's a real sense here that, you know, she should have had, I mean, I agree, look, this is not an easy kind of, these are not easy cases to try, and these are not, you know, a defendant quite possibly was delusional in some respects. But, you know, she needed to have, and whether the, I just think that it would have been, she would have had a fair trial if she'd had even a month. She didn't even have a month. Didn't she kind of have a month? I mean, there was a two- or three-week break right in the middle. Yes, but, Your Honor, the two- or three-week break, I mean, you know, once you start a trial, I mean, I'm not a trial lawyer, but I do understand that once you're starting a trial and you're in the middle of it, it's, you know, you're occupied with what's happening that day and the next day. And it's quite difficult to prepare further. And, you know, by that point, that two- or three-week break. I mean, that's what trials are. You know, usually it's a big scramble and surprises come up and you're looking for witnesses. Right. I mean, the reality. Well, and that's right, and that's why it's better to have a lawyer. But she, here she has this two- or three-week break, but by then, you know, she's already said, you know, she can't get the witnesses. And it's not, I mean, for, to try to get a witness from Europe, even if they would have come, if they would have come, that, you know, to say, you know, I mean, realistically, it's hard to get an expert in California that's not booked up three to six months in advance. So, you know, I think it's realistic to say for somebody from Europe, you need some time to say, okay, you're going to testify this day and here's the travel arrangements, here's the money for the ticket. I mean. Okay, I think we have your point well in mind. Thank you, Your Honor. Good morning. May it please the Court, Lawrence Cole for the Plaintiff and Appeal of the United States. Your Honors, the Court, I think, is focusing on the key question here, whether there was an abusive discretion in which the Court assesses four factors, whether she was diligent, whether the defendant was diligent, whether the witnesses or the evidence here to witnesses would have been useful, the inconvenience, and finally prejudice. Let me just jump in. Yes. Why didn't you all just say, okay, we'll come back in 60 days? What was the rush on the government's end? I mean, why not just say fine? I mean, U.S. attorneys have plenty to do. Why not just come back in two months and give her that time and you wouldn't be here today? I mean. The government did not object. In fact, looking back through the record, the government stipulated to all the continuances over the years that it happened before. And when the issue came up at the beginning of trial, it was the Court raising that to a sponte. The government, I don't think the government, I don't think I was even asked the government's position on that. The judge said you're going to trial. Were you the trial lawyer? I was, yes, Your Honor. And you didn't object to her request for a continuance? No, I did not. I did not want that to be an issue if it didn't need to be. An issue on appeal that was unnecessary, right. Right. So the government didn't oppose at all. Correct. The idea of more time. It was just between the judge and the defendant. That's correct, Your Honor. But what's very important to remember here is, in comparing this to the other cases, although on the surface it looks like go to trial today in this one day, you need to remember, as the record shows, a month before, in April, there was an in-camera conference between her then counsel, who became the standby counsel and the defendant in the Court, at which time the judge specifically told her, have those witnesses here. We're going to trial in a month. I want you to have those witnesses here. I will listen to them. If I think they're relevant, I will let you put them on. I may even relieve counsel at that time. So it wasn't just one day. The judge had a lengthy discussion with her about these specific witnesses. They went over them, discussed them by name, talked about what they knew and what they would talk about. That was a month before trial. So that was her first opportunity was, these witnesses came up over years, and, in fact, some of the earlier continuances were specifically for these exact witnesses to be able to show up. And even then, years ago, she said, oh, Mr. Fock or Mr. Klicka, they're booked for six months. They can't come for six months. So she had previously asked for more time for these same people. But at the time of trial, she had the month from April to May. The judge said, no, the trial is beginning now. We started. We went for four days. And then she had a break of ten days. There were actually two breaks. There was a break of ten days from May 29th to June 8th. So she had that time period to get her witnesses. Then we resumed trial and went for three more days. And then there was another break for almost two weeks, from June 10th to the 23rd. So if you look from the beginning of trial to the end of her evidence, there was almost a month when she could have tried to get somebody there. And she had that other month before trial. So this is very different from the other cases that this Court has considered where a defendant was rushed to trial on that day. I'd also note that both Armand and Farias, the cases discussed by the appellant, in both of those, those appear to have gone to trial on the very first day. In one of them, I think it was only seven weeks from charging to trial, and the other was 11 weeks. This case is radically different from that. This case had been pending for years and years where these specific witnesses were at issue over and over again. So I think it's a completely different situation from a pro se suddenly having something sprung on them. Judge Carter warned her a month before, have those witnesses here. Now, of the three witnesses, one of them actually did show up, according to her. She claimed that one of them actually came to court on the morning of June 8th when we were in session that afternoon, even though she had been told when we broke at the prior session that we were starting in the afternoon. But for some reason, she had him come that morning. So one of those witnesses, apparently, she claimed was there. She never explained why he didn't come back in the afternoon, why she didn't try to have him come that day. When Judge Carter later actually talked to that witness, he said, well, I'm back in Europe, but I was in the U.S. for seven weeks. And that included the day that he came. So I think that the argument that she was somehow prevented or unable to have that witness appear in court really has no basis at all. So she testified. Yes. And she put on her view that these were legitimate investments. That's correct. So she was able to present that. The jury heard the argument. That's exactly right. And she extensively got into that on cross-examination as well with the government's main witness, the FBI agent. I think it's also very significant in terms of assessing a prejudice that these witnesses, these are not unique witnesses. These weren't recipient witnesses who had facts that they would present that without their presence, she couldn't bring into the trial. These were claimed to be experts. And she claimed that these investments, these, as Your Honor pointed out, allegedly no-risk, very, very high-yield investments, really existed in Europe and were a common thing there. Well, if that's the case, certainly she could find someone in the financial industry somewhere. I mean, people invest in foreign investments from the United States, and certainly financial advisors and brokers in the United States would be aware of these if they really existed. She wouldn't need to bring these people in from Europe. And by the way, these two individuals, one of them was a retired banker and one of them was a real estate appraiser. These weren't brokers. These weren't investment advisors. So they weren't even really, even if you accept her point of view, in the field that she was really asserting, which is investments. And again, one of them, she said, would be presenting information that was publicly available on Deutsche Bank's website. Again, if this information is publicly available, it would seem easy to get a substitute if one of these individuals really couldn't show up. I mean, the record, I think, shows, as Judge Carter pointed out, he said, every time you get close to trial, you talk about these witnesses and then they're unavailable and they can't come. So I think she had ample opportunity to make them available. As the court pointed out, serious question whether she can meet the test of showing that they'd be useful or that they'd be prejudiced because the evidence showed these types of investments didn't really exist, that there wouldn't really be anyone who could testify that they existed. And she was never really able to rebut that. And so I think here, when the court looks at all those factors, the judge was certainly within a proper exercise of discretion to say that here she could go forward. And I think, as the court pointed out in its questions, Judge Carter did indicate, I think, that if she was able to make a showing that one or more of these individuals existed and really would show up, he talked about accommodating their schedules. Although we had those two breaks, he said during one of the conferences that he would consider bringing the jury back again later in the summer. She served her term of incarceration already? No, the judge gave her bail pending appeal, so she's on bail now and has not served any time yet. All right. So the jury was trailing along for about 35 days then? That's correct. The judge did have some concern about how long he could continue that process for, but he, in a sense, imposed on them, and they were able to accommodate both of these breaks during the trial and to bring them back. And he talked about the possibility of bringing them back yet again if necessary. And as Your Honor pointed out, I think, in the questioning, he took the extraordinary step of actually getting on the phone. We were in court at the end of the day and the evening, and we did it late in the evening so that we could get these people when it was a time of the day they could talk from Europe. And we would call. He would be on the phone himself trying to call these folks, and it was only the one that we actually were able to talk to, Mr. Hunter, who claimed to have been there and then left. So I think the judge, although he did try to move the case along expeditiously, I think the defendant had an appropriate warning in advance notice, especially with that conference the month before. So, yeah, I think it's important to keep in mind, too, the trial as compared to the prior opinions of this court where those defendants had cases that were fairly short. One was a 1326 case where the trial appeared to only last for a short period of time. Here we had a trial that started, and from the time it started until it was over, it was a month right there. So although I understand counsel's point that people can be busy during trial, we had those two breaks, one of 10 days and one of almost two weeks, when she was able to return home and prepare and get her exhibits together, and she certainly could have, during that time, tried to make arrangements for these witnesses to come in. Thank you. Thank you, Your Honor. Did you have any rebuttal? Why don't you come to the podium, please? I do have one point. In terms of, you know, counsel talked about the jury coming back and the judge exploring that, and actually the judge did explore that, but it was quite clear from the hearing transcript that he decided not to because the jurors were not available. And it was at that point, I believe it was around that time that he started asking, the judge asked the government to stipulate to him this trial. So that's it. Thank you. Thank you. Thank you very much. Thank you both, counsel, this morning for your argument. The case of United States v. Pimkova is submitted.
judges: McKeown, Wardlaw, Donato